UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cr-00082-TWP-MJD |
| | ) | |
| KEITH J. JONES | ) | |
|    a/k/a KEYBO, | ) -01 | |
| KEVIN M. BACKSTROM, | ) -02 | |
| CHARLES DAVIS, | ) -11 | |
| ANTHONY MOORE, | ) -13 | |
| HERMAN WESLEY TAVORN | ) | |
|    a/k/a WES, | ) -22 | |
| | ) | |
| Defendants. | ) | |

**ORDER ON GOVERNMENT'S SECOND, FOURTH, AND FIFTH
MOTIONS IN *LIMINE* AND DEFENDANT DAVIS'S MOTION IN *LIMINE***

This matter is before the Court on Plaintiff United States of America's ("Government") Second, Fourth, and Fifth Motions *in Limine* ([Filing No. 725](); [Filing No. 734](); [Filing No. 737]()), and on Defendant Charles Davis's ("Davis") Motion in *Limine* ([Filing No. 736]()). The Government and Davis seek preliminary rulings regarding the admissibility of certain evidence and arguments. For the following reasons, the Court **grants** the Government's Second and Fourth Motions in *Limine*, **grants in part** and **denies in part** the Government's Fifth Motion in *Limine*, and **denies** Davis's Motion in *Limine*.

### I. BACKGROUND

This matter is set for a multi-week jury trial beginning on Monday, October 23, 2023, against Defendants Keith Jones ("Jones"), Kevin Backstrom ("Backstrom"), Davis, Anthony Moore ("Moore"), and Herman Tavorn ("Tavorn") on several counts charged in the Superseding Indictment.

**Defendant Jones** is charged in Count One: Conspiracy to Distribute Controlled Substances; Count Two: Engaging in a Continuing Criminal Enterprise; Count Three: Conspiracy to Launder Money Instruments; Counts Four and Nineteen: Distribution of Methamphetamine; Counts Nine, Ten, Fourteen, and Fifteen: Possession of Methamphetamine with Intent to Distribute; Counts Twelve and Sixteen: Distribution of Fentanyl; Count Twenty-One: Possession of Fentanyl with Intent to Distribute; and Counts Twenty-Two and Twenty-Three: Possession of a Firearm by a Convicted Felon. **Defendant Backstrom** is charged in Count One: Conspiracy to Distribute Controlled Substances; and Count Three: Conspiracy to Launder Money Instruments. **Defendant Moore** is charged in Count One: Conspiracy to Distribute Controlled Substances; Count Seven: Possession of Methamphetamine with Intent to Distribute; Count Twenty-Five: Possession of Cocaine Hydrochloride with Intent to Distribute; and Count Twenty-Six: Possession of Fentanyl with Intent to Distribute. **Defendant Tavorn** is charged in Count One: Conspiracy to Distribute Controlled Substances; and Count Thirteen: Possession of Fentanyl with Intent to Distribute. **Defendant Davis** is charged in Count Five: Possession of Cocaine Hydrochloride with Intent to Distribute.

## II.    LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in limine." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). "The purpose of a motion in *limine* is not to weigh competing arguments about the strength of the parties' evidence and theories, nor is it to decide which party's assumptions are correct. A motion in *limine* weeds out evidence that is not admissible for any purpose." *Wash. Frontier League Baseball, LLC v. Zimmerman*, 2018 U.S. Dist. LEXIS 106108, at *10 (S.D. Ind. June 26, 2018). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at

1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id.* at 1401. During trial, however, the presiding judge "is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

### III. DISCUSSION

Between September 13 and 20, 2023, the parties filed several motions in *limine* and other pretrial motions. Defendants have not filed any responses in opposition to the Government's motions in *limine*, though some of their pretrial motions, in substance, oppose the Government's requests. In this Order, the Court will address the Government's Second and Fourth Motions in *Limine* before turning to its Fifth Motion in *Limine*, which relates to the Government's Notice Regarding Rule 404(b) Evidence ("Rule 404(b) Notice"), and, finally, Davis's Motion in *Limine*, which opposes portions of the Government's Fifth Motion in *Limine*. The parties' remaining pretrial motions will be ruled on by separate order.

**A.  Government's Second Motion in *Limine***

The Government's Second Motion in *Limine* ([Filing No. 725](#)) asks the Court to designate all witnesses testifying pursuant to Federal Rule of Evidence 702 as "expert witnesses" before the jury, and to permit counsel to refer to those witnesses as experts ([Filing No. 725](#)). As stated in the Court's Courtroom Procedures and Trial Practice, the Court already adheres to this practice, and has done son since 2018. The Government's motion was therefore completely unnecessary, as was the Government's commentary on the Seventh Circuit's "outspoken critique" of the Court's practices and procedures from seven years ago. The Second Motion in *Limine* is **granted.**

**B.      Government's Fourth Motion in *Limine***

The Fourth Motion in *Limine* (Filing No. 734) seeks to preclude the Defendants from attempting to introduce evidence, making argument, or mentioning the potential penalties they face if they are convicted. The Seventh Circuit has held that arguing punishment to a jury is taboo. *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997) (vacated on other grounds, *Richardson v. United States*, 526 U.S. 813, (1999)); *see also United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) (stating the sixth amendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court). The jury has no sentencing function in this case, and in the event of a guilty verdict, the imposition of sentence is strictly for this Court. In fact, the jury will be instructed that it is required to reach its verdict without regard to what sentence might be imposed. The Second Motion in *Limine* is unopposed and is **granted**.

**C.      Government's Fifth Motion in *Limine***

The Government's Fifth Motion in *Limine* (Filing No. 737) seeks preliminary rulings from the Court regarding the admissibility of evidence identified in its Rule 404(b) Notice (Filing No. 735). As stated in the Notice, the Government intends to offer evidence at trial of: (1) drug trafficking activity between Jones and/or Moore and testifying co-defendants prior to the date on which the charged conspiracy began; (2) digital scales, a money counter, cash, firearms, and body armor seized from Davis's residence in July 2022; and (3) alleged cocaine transactions between Davis and Jones in November and December 2021. *Id.* at 1–2. In his Motion in *Limine*, Davis objects to admission of the body armor and the evidence of alleged prior drug transactions between him and Jones. The Court will briefly recite the standard for admissibility under Rule 404(b) and then address each type of proffered evidence in turn.

1. **Rule 404(b) Standard**

Rule 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2) allows evidence of a crime, wrong, or other act when it is used "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Seventh Circuit has provided a four-part test to be used in 404(b) determinations. Courts are to consider whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to the charged offense to be relevant to the matter at issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See United States v. Howard*, 692 F.3d 697, 703 (7th Cir. 2012).

2. **Prior Drug Trafficking Activity Involving Jones and/or Moore**

The Government first states it intends to elicit testimony from defendants' alleged co-conspirators that they engaged in drug trafficking activity with Jones and/or Moore between 2017 and September 2020, when the charged conspiracy allegedly began.

As to the first prong of the Rule 404(b) test, the Government argues this evidence is admissible to establish the formation of the alleged conspiracy, prevent jury confusion about the witnesses' relationships with Jones and/or Moore, and "elucidate[] [Jones and Moore's] ongoing drug trafficking relationship" (Filing No. 735 at 2; Filing No. 737 at 3). The Seventh Circuit has held that evidence of prior drug transactions is admissible under Rule 404(b) for each of these reasons in drug conspiracy cases. *United States v. Johnson*, 584 F.3d 731 (7th Cir. 2009) (upholding district court's decision to admit evidence of prior drug transactions to "prevent jury

5

confusion about [defendant's] relationship with his underlings," "explain how those relationships formed into a conspiracy," "elucidate their ongoing business relationship," and "provide the jury with background and to explain [defendant's] leadership role in the [gang] and to clarify the relationship between [defendant] and his alleged coconspirators"); *United States v. Prevatte*, 16 F.3d 767, 778 (7th Cir. 1994) (stating evidence of prior bad acts may be admitted in conspiracy cases to "show the formation of the conspiracy or the prior relationship between conspirators"); *Prevatte*, 16 F.3d at 776 n.7 (collecting cases upholding admission of prior bad acts evidence to show formation of conspiracy and relationship between coconspirators). The first prong of Rule 404(b) is satisfied.

As to the second and third prongs, the Court finds that the prior drug transactions between 2017 and September 2020 are close enough in time and similar enough to the charged offenses to be relevant, and that testimony from alleged coconspirators about the alleged transactions is sufficient to support a jury finding that the defendants committed those prior drug transactions. *See Johnson*, 584 F.3d at 737 (finding that "a six-year gap is sufficiently close in time to fall within [Rule 404(b)]"); *United States v. Green*, 258 F.3d 683, 694 (7th Cir. 2001) (holding that witness testimony that witness sold drugs to defendant and saw defendant sell drugs to other was sufficient to support jury finding that defendant engaged in that conduct); *United States v. Smith*, 995 F.2d 662, 672 (7th Cir. 1993) (holding that uncorroborated testimony from accomplice is sufficient under Rule 404(b) unless it is "incredible on its face or otherwise insubstantial").

As to the fourth prong, the Court finds that the probative value of the prior drug trafficking activity evidence is not substantially outweighed by the risk of unfair prejudice. The probative value of this evidence is high since it is being offered to establish the formation of and relationships within the charged conspiracy and criminal enterprise. And as the Seventh Circuit has held, the

value of such information "far outweigh[s]" the prejudicial effect of alerting the jury that Jones and Moore sold drugs in the period leading up to the charged conspiracy and criminal enterprise. "There [is] nothing especially 'emotional or incendiary' about . . . witnesses' descriptions of past drug transactions, especially in the context of a long trial detailing numerous similar transactions within the charged period." *Johnson*, 584 F.3d at 738 (citation omitted) (quoting *United States v. Harris*, 536 F.3d 798, 809 (7th Cir. 2008), *overruled on other grounds by United States v. Corner*, 598 F.3d 411 (7th Cir. 2010)).

The proffered testimony from alleged coconspirators regarding prior drug trafficking activity with Jones and/or Moore is admissible under Rule 404(b). The Government's Fifth Motion in *Limine* is therefore **granted** as to that evidence.

   3. **Evidence Seized from Davis's Residence on July 21, 2022**

Next, the Government requests a preliminary ruling on the admissibility of evidence that investigators seized from Davis's residence on July 21, 2022, including digital scales, a money counter, cash, firearms, and body armor (Filing No. 735 at 2). The Government argues this evidence shows Davis's knowing possession of a distribution quantity of cocaine, preparation and plan to distribute cocaine, and intent to distribute cocaine on May 27, 2022 (Filing No. 737 at 6).

In support of its request, the Government cites the Seventh Circuit's decision in *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). In *Chavis*, the defendant, Chavis, was charged with conspiring to possess with intent to distribute cocaine, distribution of cocaine, and possession with intent to distribute cocaine. All the charged offenses allegedly took place in November 2002. Chavis was indicted on those charges five months later, on April 22, 2003, and he was arrested the same day. When he was arrested, Chavis had on his person $1,522 in cash and an electronic scale. At trial, the district court admitted evidence of those items under Rule 404(b). Chavis was convicted, and he appealed, arguing in part that the court erred in admitting the arrest evidence.

7

The Seventh Circuit upheld the district court's decision, finding that the evidence showed Chavis's intent and knowledge to engage in the charged crimes.

> The evidence collected at the 2003 arrest show Chavis's intent and knowledge to engage in the specified crimes in November. . . . [H]e was found at his arrest with tools of the drug trade, such as scales, making it highly unlikely that [his co-conspirator] merely happened into Chavis's car with crack cocaine on November 22. All the pieces of arrest evidence suggest that the innocent spin that Chavis seeks to give the November events is just that[—]spin. The arrest evidence indicates that Chavis actually intended to take part in a drug conspiracy in November 2002.

*Chavis*, 429 F.3d at 669–70. Likewise, the evidence seized from Davis's residence less than two months after the charged offenses allegedly occurred is offered to show his knowledge and intent to possess with intent to distribute cocaine, as charged in the Superseding Indictment. The proffered evidence therefore satisfies the first prong under Rule 404(b).

As to the second prong, the seized evidence is similar enough and close enough in time to the charged offense to be relevant. The Government has cited ample caselaw demonstrating that the items seized from Davis's residence constitute tools of the drug trafficking trade (Filing No. 737 at 7 n.3). In response,[1] Davis challenges the admissibility of the body armor. He argues that "body armor is not a tool of the trade of individuals that purchase or sell cocaine. Like firearms, many people possess body armor for home defense or merely because it is appealing to some folk" (Filing No. 736 at 2). However, Davis cites no legal authority supporting his argument. Although people might purchase body armor for any number of reasons, that does not mean body armor is not also a tool of the drug trade. Several federal courts in other districts have identified body armor as a tool of the drug trade. *See United States v. Young*, 847 F.3d 328, 355 (6th Cir. 2017) (stating that "firearms, ammunition, body armor, and magazines are relevant evidence in a drug conspiracy

---

[1] The Court construes the portion of Davis's Motion in *Limine* (Filing No. 736) that address the Rule 404(b) evidence as a response to the Government's Fifth Motion in *Limine*.

trial "); *United States v. Garcia*, 835 F.3d 479, 489–90 (4th Cir. 2016) (finding conviction in drug conspiracy case was supported by sufficient evidence, including evidence that "officers found a bulletproof vest that [a detective] testified was 'another tool of the drug trade,'" despite admission of other improper evidence); *United States v. Mays*, 466 F.3d 335, 341 (5th Cir. 2006) ("The firearms, body armor, scales, measuring cup, and baggies all qualify as 'tools of the trade' that indicate that Mays did not intent to keep the cocaine base for personal use."); *cf. United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) ("[T]he illegal drug industry is, to put it mildly, a dangerous, violent business.").

Moreover, the Seventh Circuit has repeatedly described items that could serve a variety of legal purposes—like digital scales, razor blades, latex gloves, plastic sandwich baggies, cell phones, cash, and firearms—as tools of the drug trade. *See, e.g.*, *United States v. Zamudio*, 18 F.4th 557, 563 (7th Cir. 2021) (identifying a digital scale and firearms as "tools of the trade"); *United States v. Thomas*, 845 F.3d 824, 834 (7th Cir. 2017) (identifying digital scales, a cutting agent, and plastic sandwich baggies with the corners cut out as tools of the trade). According to the Government, it intends to offer witness testimony that body armor is a tool of the drug trade, to establish the body armor's relevance to the offense charged against Davis. As the Government correctly notes, Davis may cross-examine the Government's witnesses about the other reasons a person may own body armor. *Id.*

At this stage, the Court finds that the body armor is similar enough to the charged offense to be relevant. Davis does not dispute the relevance of the other items seized from his residence—digital scales, a money counter, cash, and firearms. Those items are also similar enough to the charged offense to be relevant.

As to timing, the proffered evidence was seized from Davis's residence less than two months after the charged offenses allegedly took place. The Seventh Circuit has held that evidence seized up to five months after a charged offense took place is sufficiently close in time to satisfy the second prong of Rule 404(b). *See Chavis*, 429 F.3d at 669–70. The second prong is therefore satisfied here. Further, the items seized from Davis's residence is sufficient to support a jury finding that Davis possessed those items, thus satisfying the third prong.

As to the fourth prong, the Court finds that the probative value of the seized evidence is not substantially outweighed by the danger of unfair prejudice. Davis argues that the body armor should be excluded under Rule 403 but does not explain how the probative value of the body armor would be substantially outweighed by the risk of unfair prejudice. As explained above, the body armor and other items seized from Davis's residence may be considered tools of the drug trafficking trade and therefore have probative value. And while this evidence might be prejudicial to Davis, it would not be unfairly prejudicial. "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Hicks*, 368 F.3d 801, 807 (7th Cir. 2004) (internal citations omitted). There is "nothing inherently emotional or incendiary" about the items seized from Davis's residence. As Davis himself points out, body armor is purchased by many people for completely legal reasons (Filing No. 736 at 2). The fourth prong is therefore satisfied.

For the foregoing reasons, the Court **grants** the Government's Fifth Motion in *Limine* as to the evidence seized from Davis's residence on July 21, 2022.

4. **Cocaine Transactions Between Davis and Jones in November and December 2021**

The Government lastly intends to offer evidence of prior cocaine trafficking transactions between Jones and Davis in November and December 2021 (Filing No. 737 at 7–8). Davis believes this evidence will consist of text messages between him and Jones (Filing No. 736 at 2). The

10

Government argues that the evidence of prior drug transactions shows Davis's knowledge and intent to traffic in significant quantities of cocaine. The Seventh Circuit has held that prior drug trafficking activities are admissible to show a defendant's knowledge, experience, ability, and intent to traffic in large quantities of drugs. *See United States v. Denberg*, 212 F.3d 987, 994 (7th Cir. 2000); *see United States v. Allison*, 120 F.3d 71, 75 (7th Cir. 1997), *cert. denied*, 522 U.S. 987 (1997); *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996); *United States v. Lewis*, 110 F.3d 417, 420 (7th Cir. 1997). The Court finds that evidence of prior cocaine transactions with Jones would tend to show Davis's knowledge and intent to traffic in cocaine. The Court also finds that the November and December 2021 cocaine transactions are close enough in time and similar enough to the charged offense to be relevant, and Davis does not argue otherwise. The first two prongs of the Rule 404(b) test are satisfied.

In determining the sufficiency of evidence under Rule 404(b), the question is whether "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Howard*, 692 F.3d at 706. In response, Davis argues "there is insufficient evidence that the texts relate to any drug dealing activity" and "[t]he nature of the text is speculative at best" (Filing No. 736 at 3). On reply,[2] the Government states that it intends to offer opinion testimony from a DEA agent that the text messages relate to drug dealing activity (Filing No. 761 at 7). The two text messages identified in Davis's response ("Number still same" and "28500"), by themselves, are not sufficient for the court to decide, but an entire string of text messages might be. Without more information about the evidence the Government intends to offer to show the prior drug transactions, the Court cannot determine whether that evidence would be sufficient to support a jury finding that Davis committed those transactions. Based on the limited information offered by the parties, the Court

---

[2] The Court construes the Government's Response to Davis's Motion in *Limine* as a reply in support of its Fifth Motion in *Limine* with respect to the Rule 404(b) text message evidence (Filing No. 761 at 7–8).

cannot conclude whether the proffered evidence of prior drug transactions between Davis and Jones satisfies Rule 404(b)'s third prong.

As to the fourth prong, Davis asserts that "the probative value of said texts is substantially outweighed by the prejudicial effect it would have on the Defendant" (Filing No. 736 at 3). Davis does not develop this argument, nor does he argue that the text messages would be *unfairly* prejudicial. "As [the Seventh Circuit has] repeatedly stated, 'relevant evidence is, by its very nature, prejudicial, and that evidence must be *unfairly* prejudicial to be excluded.'" *Denberg*, 212 F.3d at 994 (emphasis in original) (quoting *United States v. Long*, 86 F.3d 81, 86 (7th Cir. 1996)). The proffered evidence satisfies Rule 404(b)'s fourth prong.

Because the Court is not able to determine whether the proffered evidence satisfies Rule 404(b)'s third prong, the Government's Fifth Motion in *Limine* is **denied** as to the text message evidence of prior cocaine transactions between Davis and Jones in November and December 2021. The parties have two options, they can be prepared at the October 4, 2023, pretrial conference to discuss and proffer additional evidence so the Court can determine admissibility of this evidence in advance of trial; of if the Government seeks to offer this evidence at trial, its admissibility will be addressed at that time, outside the presence of the jury.

D. **Davis's Motion in *Limine***

Davis's asks the Court to: (1) order the Government to produce the Grand Jury transcript of the proceeding that led to the Superseding Indictment; (2) preclude the Government from offering evidence of the body armor seized from his residence; and (3) preclude the Government from offering the text messages between Davis and Jones showing prior alleged cocaine transactions. Davis also notes that the "Government has informed counsel that it will not offer any evidence that a personal use quantity of marijuana was found in [Davis's] residence," but "simply wants to make this part of the record" and is not moving for exclusion of the marijuana (Filing No.

736 at 2). The Court will therefore address only the request for the Grand Jury transcript, exclusion of the body armor, and exclusion of the text messages.

 1. **Grand Jury Transcript**

Davis seeks production of the transcript for the Grand Jury proceeding that led to Davis being charged in Count 24 of the Superseding Indictment with being a Felon in Possession of a Firearm, which was later dismissed by the Government (Filing No. 503 at 28–29; Filing No. 664). Davis asserts that despite informing the Government that he was not a convicted felon, Special Agent Matthew Holbrook ("Agent Holbrook") testified to the Grand Jury that Davis was a convicted felon, leading to the improper charge. Davis requests a copy of the Grand Jury transcript to impeach Agent Holbrook, who is expected to testify about the seizure of firearms, digital scales, a money counter, body armor, and cash found in Davis's bedroom. *Id.*

The Government's response provides more context as to why Davis was originally charged in Count 24. The Government explains that at the time of the Grand Jury proceeding, the Government had obtained "clear evidence establishing Davis' prior felony conviction," including "not only a certified copy of Davis' felony convictions, but [also] online records maintained by the State of Indiana and a Pretrial Services Report prepared by the United States Probation Office in this case" (Filing No. 761 at 2). Based on this evidence, Agent Holbrook testified to the Grand Jury that Davis was a convicted felon. *Id.*

Davis's counsel subsequently contacted the Government and stated that an "amended judgment" had reduced Davis's felony convictions to misdemeanors, but Davis's counsel did not provide a copy of that amended judgment. The Government then sent a subpoena to the Marion County Clerk of Courts for documents related to the convictions. Agent Holbrook did not find an amended judgment in the responsive documents, but he did find physical documents indicating that "the Clerk of Courts had been ordered to enter an amended judgment reducing the felony

convictions to misdemeanors but had never entered the amended judgment." *Id.* The Government argues that Davis knew that the Marion County Court records established his felon status at the time of the Grand Jury proceedings, "as evidenced by the fact that he filed a motion to modify the judgment six days before the government filed the motion to dismiss [Count 24] in the instant case." *Id.* at 3. The motion to modify, filed on July 13, 2023, indeed confirms that Davis knew "the amended judgment . . . was never actually put into the case file" ([Filing No. 761-1 at 1](#)).

Considering the foregoing context, the Government argues the Grand Jury transcript is irrelevant, it involves a collateral matter, and its probative value is substantially outweighed by the danger of confusing the issues at trial, misleading the jury, and wasting the jury's time. *Id.* at 4–5. The Court agrees. The relevance of Agent Holbrook's Grand Jury testimony is nominal at best. As the Government notes, Davis is no longer charged with a status crime, and whether Davis is or is not a convicted felon (or was or was not charged with a status crime) does not make it more or less likely: (i) that Davis was in possession of firearms, digital scales, a money counter, body armor, and a large amount of cash; or (ii) that he was using those items for purposes of drug dealing.

The only purpose the Grand Jury transcript would serve would be to impeach Agent Holbrook's credibility. However, the transcript's probative value for that purpose is extremely limited because Agent Holbrook's Grand Jury testimony was, at the time, accurate and based on official court records. Further, the limited probative value of the transcript would be substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time. If Davis were to impeach Agent Holbrook based on his Grand Jury testimony about Davis's felony conviction, the Government would be permitted to rehabilitate Agent Holbrook by diving into the complicated reasons why he originally testified about the conviction. This line of evidence would waste too much time in an already very long trial, and it would risk confusing several issues,

including whether Davis was convicted of a felony, whether he is currently a convicted felon, and whether he is being charged with Possession of a Firearm by a Felon. Notably, this confusion would only serve to prejudice Davis.

In addition, Davis has not shown the particularized need required to warrant the disclosure of Grand Jury transcripts. The judicial system consistently recognizes that the proper functioning of grand jury proceedings depends upon their absolute secrecy. S*ee Matter of Grand Jury Proceedings, Special Sept., 1986*, 942 F.2d 1195, 1198 (7th Cir. 1991) (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979)).

> To obtain grand jury material, despite the presumptive secrecy imposed by Fed. R. Crim. P. 6(e), a litigant must show that the information is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed.

*United States v. Campbell*, 324 F.3d 497, 498–99 (7th Cir. 2003) (citing *Douglas*, 441 U.S. at 222).

The party seeking disclosure of grand jury transcripts must demonstrate more than relevance, as "secrecy is not broken 'except where there is a compelling necessity' for the material." *Hernly v. United States*, 832 F.2d 980, 984 (7th Cir. 1987) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). Such necessity "must be shown with particularity." *Id.* Davis requests a copy of the Grand Jury transcript solely for the purpose of impeaching Agent Holbrook's credibility with prior testimony that was credible at the time it was given. Davis has not shown a compelling necessity for the Grand Jury transcript, and the probative value of the transcript is substantially outweighed by the risks of jury confusion, confusion of the issues, and wasting time. Davis's request for the Grand Jury transcript is **denied**.

**2. Body Armor**

Davis next asks the Court to preclude the Government from offering evidence that Davis possessed body armor under Rule 403. For the reasons discussed in the Court's analysis of the

Government's Fifth Motion in *Limine*, the body armor is admissible under Rule 404(b), and its probative value is not substantially outweighed by the risk of unfair prejudice to Davis. *Supra*, § III(C)(2). Davis's Motion in *Limine* as to the body armor is therefore **denied**.

### 3. Text Messages Between Davis and Jones

Davis lastly requests that the Court exclude text messages between Davis and Jones purportedly showing cocaine dealing transactions (Filing No. 736 at 3). This request is addressed in the Court's discussion of the Government's Fifth Motion in *Limine*. *Supra*, § III(C)(3). The text message evidence would serve a proper non-propensity purpose under Rule 404(b), but without more detail about the evidence the Government intends to offer, the Court cannot determine whether it is admissible. As noted earlier, without additional information, this issue is best resolved in the context of trial (or with additional discussion at the final pretrial conference); so, for now, Davis's request to exclude the text message evidence is **denied**.

## IV.    CONCLUSION

For the reasons explained above, the Government's Second Motion in *Limine* (Filing No. 725) is **GRANTED**; the Government's Fourth Motion in *Limine* (Filing No. 734) is **GRANTED**; the Government's Fifth Motion in *Limine* (Filing No. 737) is **GRANTED in part and DENIED in part**; and Davis's Motion in *Limine* (Filing No. 736) is **DENIED**. An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the trial, counsel may request a hearing outside the presence of the jury. Likewise, if the parties believe that specific evidence is inadmissible during the trial, counsel may raise specific objections to that evidence.

The Court is willing to give a limiting instruction during the trial at the time 404(b) evidence is introduced, upon request of defense counsel. The Seventh Circuit has "caution[ed]

against judicial freelancing in this area." *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014). In some situations, the defense may prefer "to let the evidence come in without the added emphasis of a limiting instruction," and if so the judge should not preempt this. *Id.*; *see also United States v. Lawson*, 776 F.3d 519, 522 (7th Cir. 2015) ("[T]he choice whether to give a limiting instruction rests with the defense, which may decide that the less said about the evidence the better."). Counsel for Defendants shall file a proposed limiting instruction by no later than **Thursday, October 19, 2023**, if they intend to request any limiting instruction during trial.

**SO ORDERED**.

Date:   10/2/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Ainuddin Ahmed
DOJ-USAO
aineahmed@aineahmedlaw.com

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bradley.blackington@usdoj.gov

Jonathan A. Bont
Frost Brown Todd LLP
jbont@fbtlaw.com

Peter S Herrick
Peter S. Herrick, Attorney at Law
pssherrick@gmail.com

Kelsey Massa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelsey.massa@usdoj.gov

Ross G. Thomas
The Law Office of Ross G. Thomas
rossthomas@defenselawyerindiana.com

Stacy R. Uliana
ULIANA LAW
stacy@ulianalaw.com

Maxwell Bryant Wiley
BALDWIN PERRY & KAMISH, P.C.
max@criminaldefenseteam.com